## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01169-LTB-CBS

SOLOMON BEN-TOV COHEN,

     Plaintiff,

v.

JOHN P. LONGSHORE, Field Office Director U.S. Dept. of Homeland Security/ICE, and CAROLYN VAN BARNEVELDT, Mail Clerk El Paso County Sheriff's Office, Colorado,

     Defendants.

---

## JOHN P. LONGSHORE'S MOTION TO DISMISS PURSUANT TO
## FED. R. CIV. P. 12(b)(1) and 12(b)(6)

---

John P. Longshore should be dismissed from this action for at least four independent reasons. First, the Court lacks jurisdiction over the discretionary decision to detain Plaintiff made by the United States Immigration and Custom Enforcement Agency ("ICE"), Longshore's employer. Second, Plaintiff fails to state a claim against Longshore because special factors counsel against the Court implying a remedy under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Third, even if a *Bivens* remedy existed, Plaintiff fails to state a claim. Fourth, even if this Court had jurisdiction and a *Bivens* remedy existed, Longshore is entitled to qualified immunity because Plaintiff's detention was authorized by statute.

**Factual background**

    **A.    Plaintiff's immigration history**

Plaintiff is a citizen and national of the United Kingdom who entered the United States most recently on June 21, 2002 at Los Angeles, California, under the Visa Waiver Program, 8 U.S.C. § 1187, and was authorized to stay in the United States for no longer than 90 days.  Ex. 1 (Decl. of Samuel Edwards) at ¶ 2 & Ex. 2; *see also Cohen v. DeLong*, 2010 WL 1049848, *3 (10th Cir. March 23, 2010).

Plaintiff did not depart the United States within 90 days, and ICE issued an order of removal on November 26, 2003.  Ex. 1 at ¶ 3 & Ex. 2.

Plaintiff was detained by ICE on November 26, 2003, in Virginia after ICE received information from the U.S. Capitol Police that Plaintiff allegedly sent inappropriate emails to a member of Congress, Representative Henry Waxman, and had demanded an appointment with him.  Ex. 1 at ¶ 4 & Ex. 4.[1]  ICE determined at that time that Plaintiff had an outstanding warrant for his arrest and four previous arrests from 2000 to 2003.  *Id.*

After ICE detained Plaintiff, he told ICE that he feared returning to the United Kingdom and Plaintiff applied for asylum, restriction on removal, and protection under the Convention Against Torture.  Ex. 1 at ¶ 5.  "In his application, [Plaintiff] stated that he had been ordered

---

[1]Plaintiff refers to this incident in his habeas petition as follows: "Applicant was arrested in the office of Congressman Henry Waxman at the Rayburn Office Building two days before Thanksgiving, November 2003 on the false charge of 'making threats against a Congressman' by a Special Agent of the Capital Police."  *Cohen v. Mukasey*, Case No. 08-cv-1844-LTB-CBS, Dkt. No. 3 at 11.  Plaintiff also refers to this incident in more detail in *Cohen v. Busch*, 08-cv-2188-LTB-CBS, Dkt. No. 3.  The Court dismissed that complaint and denied Plaintiff's motion to transfer venue to the District of Columbia.  *Cohen v. Busch*, 2010 WL 2585345 (D. Colo. June 23, 2010).  Plaintiff appealed the denial of the motion to transfer, and the Tenth Circuit affirmed. *Cohen v. Waxman*, 2010 WL 4868057 (10th Cir. Dec. 1, 2010).

detained in a British psychiatric facility 'on orders of [the] privy council/member of parliament after distributing [a] copy of [a] satirical play [he had written] about [the] stockmarket and the queen.'" *Cohen v. DeLong*, 2010 WL 1049848, *3 (brackets in original).  Because Plaintiff applied for asylum, ICE issued a Form I-863 Notice of Referral to Immigration Judge, dated February 6, 2004, to initiate "asylum only" proceedings before an immigration judge.  *Id., see also* 8 C.F.R. § 217.4(b)(1) (providing that a Visa Waiver Program entrant who is found to be deportable is to be ordered removed by an ICE district director and shall not be referred to an immigration judge except if he applies for asylum).

After his detention in 2003, Plaintiff requested that he be released because of a medical condition.  Ex. 1 at ¶ 6 & Ex. 4.  In response, ICE released Plaintiff in March 2004 after an obligor posted a $3,000 bond.  Ex. 1 at ¶ 6 & Exs. 4 & 5.  An immigration judge set a hearing date of July 22, 2005, to consider Plaintiff's asylum application.  Ex. 1 at ¶ 6 & Ex. 6.[2] However, Plaintiff did not appear at that hearing and immigration judge ordered him removed in absentia.  *Id.*

Two times in 2007, ICE issued a notice to the bond obligor requiring that he deliver Plaintiff to ICE custody.  Ex. 1 at ¶ 7 & Exs. 7 & 8.  The first required the obligor to deliver Plaintiff to ICE on May 29, 2007.  Ex. 7.  The notice stated: "***Warning: Failure to surrender the alien(s) in accordance with this demand will result in BREACHING THE BOND and its FORFEITURE TO THE GOVERNMENT.***"  *Id.* (emphases in original).  The obligor did not deliver Plaintiff as demanded.  Ex. 1 at ¶ 7.  The second notice to the obligor required the obligor

---

[2]In an "asylum only" proceeding before an immigration judge, such as the one in which Plaintiff was involved, the immigration judge only has authority to determine whether an alien is eligible for asylum or withholding or deferral of removal.  8 C.F.R. § 208.2(c)(3).

to deliver Plaintiff to ICE on August 20, 2007.  Ex. 8.  It contained the same warning as the first demand.  *Id*.  The obligor did not deliver Plaintiff as demanded.  Ex. 1 at ¶ 7.

In 2008, Plaintiff filed a motion with the immigration court to reopen his case because he allegedly did not receive notice of the asylum hearing held on July 22, 2005.  Ex. 1 at ¶ 8 & Ex. 9.  The immigration court granted Plaintiff's motion on February 15, 2008, reopening the proceedings for the limited purpose of allowing Plaintiff an "asylum only" hearing (i.e., a hearing on his application for asylum and related forms of relief), and changing venue to Denver, Colorado.  *Id.*

Plaintiff was detained by ICE in Aurora, Colorado on June 1, 2008, after being released from the custody of the State of Colorado.  Ex. 1 at ¶ 8 & Ex. 10.  ICE detained Plaintiff because of his failure to appear at his previously scheduled immigration proceedings, his lack of ties to and equities in the United States, and his arrest record in the United States.  *Id.*  The basis for the detention was 8 U.S.C. § 1226.  Ex. 1 at ¶ 8 & Ex. 11.

After ICE detained Plaintiff on June 1, 2008, ICE notified the Immigration Court that Plaintiff was in its custody and asked the immigration judge to recalendar the asylum proceedings.  Ex. 1 at ¶ 9.  Plaintiff was then scheduled for a hearing before an immigration judge to consider his asylum application.  *Id.*

The immigration judge conducted a bond redetermination hearing in Plaintiff's case on June 25, 2008, setting a bond of $10,000.  Ex. 1 at ¶ 10 & Ex. 12.  On that same day, the immigration judge vacated his bond decision for jurisdictional reasons.[3]  *Id.*  Plaintiff had thirty

---

[3]An immigration judge lacks jurisdiction to grant bond to an alien like Plaintiff in "asylum only" proceedings.  *See* 8 C.F.R. § 208.2(c)(3)(i).

days to appeal this decision to the Board of Immigration Appeals ("BIA"), pursuant to 8 C.F.R. § 1003.38.  *Id.*  Plaintiff did not appeal the immigration judge's bond decision.  *Id.*

Plaintiff, through counsel, filed a motion in immigration court requesting a bond reduction on or about October 9, 2008.   Ex. 1 at ¶ 11.  The immigration judge denied that motion on October 30, 2008.  *Id.*  Plaintiff had thirty days to appeal this decision to the BIA pursuant to 8 C.F.R. 1003.38.  *Id.*  Plaintiff submitted an appeal on December 19, 2008.  *Id.*  The BIA dismissed the appeal.  Ex. 1 at ¶ 11 & Ex. 13.

The immigration judge denied Plaintiff's application for asylum, withholding of removal, and withholding of removal under the Convention Against Torture on November 6, 2008.  Ex. 1 at ¶ 12.  Plaintiff appealed that decision to the BIA.  *Id.*  The BIA dismissed the appeal on April 7, 2009.  *Id.*  Once the BIA ruled on Plaintiff's appeal regarding asylum, the order of removal became final and executable.  *See, e.g., Shehu v. Attorney General of the United States*, 482 F.3d 652, 656 (3d Cir. 2007) (denial of a Visa Waiver Program applicant's petition for asylum, withholding of removal, and relief under the Convention Against Torture constitutes a final order of removal).  Once the order of removal was final, ICE's authority for detention shifted from 8 U.S.C. § 1226, which applies to detention of aliens pending a decision on removal, to 8 U.S.C. § 1231, which applies to detention of aliens who have been ordered removed.  Ex. 1 at ¶ 12.

Plaintiff appealed the BIA's denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture.  *Cohen v. DeLong*, 2010 WL 1049848, *3. The Tenth Circuit dismissed Plaintiff's appeal of the denial of his asylum application for lack of jurisdiction because Plaintiff's asylum application was untimely.  *Id.*  However, the Tenth Circuit did reach the merits of Plaintiff's appeal of the denial of his application for withholding of removal and protection under the Convention Against Torture.  *Id.*  As for those claims, the

Tenth Circuit found that Plaintiff's "argument that he faces persecution by the Queen of England because of the play he wrote is patently frivolous." *Id.* The Tenth Circuit therefore denied his appeal regarding withholding of removal and protection under the Convention Against Torture. *Id.* at *3-4.

On June 19, 2009, ICE cancelled Plaintiff's immigration bond. Ex. 1 at ¶ 13 & Ex. 14. As explained below, having a bond that has not been cancelled does not entitle an alien to release from detention.

Plaintiff was removed from the United States on February 9, 2011. Ex. 1 at ¶ 14. ICE began the process of removing Plaintiff shortly after Plaintiff's removal order became final on April 7, 2009. *Id.* To do so, ICE had to obtain travel documents. *Id.* Obtaining travel documents generally requires cooperation from the alien. *Id.* Plaintiff repeatedly refused to cooperate in obtaining travel documents and, therefore, his removal was delayed. *Id.*[4]

**B.     This case**

In this case, Plaintiff brings claims against Longshore and Caroline Van Barneveldt. (Undersigned counsel does not represent the latter, and, therefore, will not discuss claims against her.) Plaintiff does not name the United States as a defendant. This Court originally dismissed the case before a response was required from Longshore. Dkt. No. 23. With respect to the claim against Longshore, the Court held that *Heck v. Humprey*, 512 U.S. 477 (1994) (generally prohibiting an individual from recovering damages in a civil rights action for an allegedly unlawful confinement where there has not been a favorable termination of the criminal action on

---

[4]Longshore interprets Plaintiff's complaint as challenging his confinement from June 1, 2008 to June 19, 2009, rather than challenging the delay in removing him. If the Court interprets Plaintiff's claim as challenging the latter, Longshore will seek leave to supplement his briefing to address that issue.

appeal or in a collateral action) barred Plaintiff's claim against Longshore.  Plaintiff appealed, and the Tenth Circuit reversed and remanded because it concluded that *Heck* did not bar Plaintiff's claim. *Cohen v. Longshore*, 621 F.3d 1311 (10th Cir. 2010).  However, the Tenth Circuit made clear that it expressed no opinion on the merits of Plaintiff's claim.  For example, it stated that "Plaintiff's claim in the underlying case may well be frivolous" and "we express no opinion as to the merit or ultimate disposition of Plaintiff's claims."  *Id*. at 1318.

Plaintiff brings a *Bivens* claim against Longshore.  Plaintiff's complaint titles his claim against Longshore as "false imprisonment."  Dkt. No. 59 at 4.  The Tenth Circuit also referred to Plaintiff's claim against Longshore as "false imprisonment."  *Cohen v. Longshore*, 621 F.3d at 1315.  However, Plaintiff claims that jurisdiction over his claim against Longshore rests on *Bivens* and the United States Constitution.  Dkt. No. 59 at 3.  Cohen also states that he is suing Longshore in his individual capacity.  *Id.* at 8.  Therefore, Plaintiff brings his claim against Longshore under *Bivens*.[5]

Plaintiff's claim against Longshore makes three factual allegations.  First, Plaintiff alleges that Longshore cancelled Plaintiff's immigration bond.  Dkt. No. 59 at 4.  Second, Plaintiff alleges that Longshore "falsely imprisoned [Plaintiff] by holding [Plaintiff] in ICE contract facilit[ies]."  *Id*.  Third, Plaintiff alleges that "in habeas corpus case no: 1:08-cv-01844-LTB-CBS it was claimed that this bond had been revoked.  This was a lie."  *Id*.

---

[5]If Plaintiff intended to bring a false imprisonment tort claim, then the proper defendant would be the United States, not Longshore.  *See, e.g., Smith v. U.S.*, 561 F.3d 1090, 1099 ("The United States is the only proper defendant in an FTCA action.") (citation omitted).  If the United States were added as a party, it would also move to dismiss for lack of jurisdiction based on failure to administratively exhaust as required under the Federal Tort Claims Act as well as many of the same bases on which Longshore moves to dismiss.

### C.      Other litigation in this Court

The Court's prisoner litigation form requires Plaintiff to list other lawsuits he has filed in state or federal court while incarcerated.  Dkt. No. 59 at 7.  Plaintiff lists seven such lawsuits and provides some details as requested by the Court.  However, Plaintiff's information is inaccurate. For example, at the time Plaintiff submitted the amended complaint at issue here, he had filed 16 complaints in this Court while incarcerated.[6]  The Court has dismissed all but this case.  (Since Plaintiff filed the complaint at issue here, Plaintiff filed one more complaint in this Court, which the Court has already dismissed.[6])  Furthermore, some of the information Plaintiff provides about cases he has filed while incarcerated is inaccurate.  For example, he claims that his appeal of his habeas application is pending in the Tenth Circuit.  Dkt. No. 59 at 7.  In fact, the Tenth Circuit dismissed that appeal as moot.  *Cohen Ma v. Hunt*, 2010 WL 1429528 (10th Cir. Apr. 12, 2010). Plaintiff also claims that his case against U.S. Representative Henry Waxman is pending.  Dkt. No. 59 at 13.  In fact, this Court dismissed that case and the Tenth Circuit affirmed on appeal. *Cohen v. Waxman*, 2010 WL 4868057.

**Statutory background**

### A.      The Visa Waiver Program

Plaintiff entered the United States under the Visa Waiver Program ("VWP") and, therefore, some background on that program is necessary to understand this case.  Congress established the VWP in 8 U.S.C. § 1187.  The VWP provides for expedited entry into the United

---

[6]Those cases are: 08-cv-978, 08-cv-1844, 08-cv-1991, 08-cv-2089, 08-cv-2188, 08-cv-2806, 09-cv-736, 09-cv-844, 09-cv-1112, 09-cv-1169 (this case), 09-cv-2710, 09-cv-2966, 10-cv-889, 10-cv-1059, 10-cv-1312, and 10-cv-1362.

[6]11-cv-359.

States for nationals from certain countries that fulfill certain requirements.  Congress passed the VWP to further the purposes of "promoting better relations with friendly nations, eliminating unnecessary barriers to travel, stimulating the travel industry, and alleviating vast amounts of paperwork."  *Ferry v. Gonzales*, 457 F.3d 1117, 1126 (10th Cir. 2006) (citation omitted).  "But to prevent an alien from abusing the VWP, Congress required a VWP applicant to sign a waiver of rights to 'assure [] that . . . [the alien] will leave on time and will not raise a host of legal and factual claims to impede his removal if he overstays.'" *Id.*  (citation omitted).  A VWP entrant waives "any right . . . to contest, other than on the basis of an application for asylum, any action for removal of the alien."  8 U.S.C. § 1187(b)(2).

The process for removing a VWP entrant is streamlined.  If a VWP entrant is found to be deportable under 8 U.S.C. § 1227 (which includes overstaying authorization to remain in the United States, as happened in his case), then the VWP entrant is ordered to be removed from the United States.  8 C.F.R. § 217.4(b)(1).  The removal is ordered by an ICE official.  *Id.*  (In contrast, most removal orders are made by immigration judges.)  However, if a VWP entrant applies for asylum after he has been ordered removed, he is referred to an immigration judge who considers that application.  *Id.*  This known as an "asylum only" proceeding because the immigration judge considers only whether the VWP entrant qualifies for asylum (8 C.F.R. § 208.2(c)(3)(I)); the immigration judge does not consider whether the VWP entrant is removable for violating the conditions of the VWP program because that determination is entrusted to an ICE official.

**B.    Detention, bonds, revocation of bonds, and cancellation of bonds**

An alien may be arrested and detained while a decision regarding removal is pending.  8 U.S.C. § 1226(a).  In most circumstances, the Attorney General may release such an alien after

the alien pays a bond.  8 U.S.C. § 1226(a)(2).  However, "[t]he Attorney General at any time

may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien

under the original warrant, and detain the alien."  8 U.S.C. § 1226(b).  Congress has authorized

the Department of Homeland Security to proscribe regulations regarding bonds.  8 U.S.C. §

1103(a)(3).  Those regulations require that if an alien is rearrested pursuant to 8 U.S.C. §

1226(b), that the bond shall be revoked and cancelled.  8 C.F.R. § 236.1(c)(9).

Although an alien arrested pending a removal decision may be released on bond, once an

alien is ordered removed, the Attorney General must detain the alien (with some exceptions not

applicable here).  8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall

detain the alien.").  Once an order of removal is entered, any bond must be cancelled.  8 C.F.R. §

241.3(b).

The cancellation of a bond is release of a claim by the United States on the security the

bond obligor pledged as a bond.  8 C.F.R. § 103.6(e).  A breach of the bond, on the other hand,

occurs when "there has been a substantial violation of the stipulated conditions."  *Id*.

**Argument**

Plaintiff's claim seems to rest on a misunderstanding of the effect of the payment of a

bond.  Plaintiff was detained in 2004 to enforce an order of removal issued in 2003.  Ex. 1 at ¶¶

3-4.  Plaintiff claimed a medical condition and, after an obligor paid a $3,000 bond on Plaintiff's

behalf, ICE released Plaintiff.  *Id.* at ¶ 6 .  The bond was not cancelled until June 19, 2009.  *Id.*

at ¶ 13.  Plaintiff seems to believe that the bond prevented ICE from detaining him until that

bond was cancelled.  Plaintiff is wrong.  As explained above, the Attorney General has discretion

to rearrest "at any time" an alien who has been released on bond pending a removal

determination.  8 U.S.C. § 1226(b).  8 U.S.C. § 1226(b), by itself, refutes Plaintiff's argument.

Furthermore, the regulation requires that if an alien is rearrested and detained under 8 U.S.C. § 1226(b) that "any outstanding bond shall be revoked and cancelled."  8 C.F.R. § 236.1(c)(9). And once a removal order has been issued, the Attorney General must detain an alien and any bond must be cancelled.  8 U.S.C. § 1231(a)(2); 8 C.F.R. § 241.3(a) & (b).  The cancellation of a bond is simply the release by the United States of any claim on the security the bond obligor pledged for the bond.  An uncancelled bond does not entitle an alien to be free from detention. Thus, Plaintiff's detention was handled as the statutes and regulations dictate.

As discussed below, the Court lacks jurisdiction over Plaintiff's claim, Plaintiff fails to state a claim, and Longshore is entitled to qualified immunity.

**A.      The Court lacks jurisdiction.**

**1.      Standard of review**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) attacks the existence of jurisdiction.  The party invoking jurisdiction bears the burden of proof.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's factual allegations, and has discretion to consider affidavits and other evidence to resolve disputed jurisdictional facts.  *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995).  Considering such evidence outside of the pleadings in order to resolve a jurisdictional dispute does not require converting a motion to dismiss to a motion for summary judgment.  *Id.* at 1002.

2.   **The Court lacks jurisdiction over claims regarding Plaintiff's detention from June 1, 2008, to April 7, 2009, pursuant to 8 U.S.C. § 1226(e) and 8 U.S.C. § 1252(a)(2)(B).**

Plaintiff was detained from June 1, 2008, until April 7, 2009, subject to 8 U.S.C. § 1226 pending the completion of his asylum proceedings before an immigration judge.  Ex. 1 ¶¶ at 8-12.  The BIA dismissed the appeal of his asylum application on April 7, 2009, and, therefore his removal order became final and executable.  *Shehu*, 482 F.3d at 655.  Under 8 U.S.C. § 1226, the Attorney General[7] has discretion as to whether to detain an alien like Plaintiff whose removal determination is pending.  8 U.S.C. § 1226(a).

Congress has barred this Court from reviewing a discretionary bond determinations under 8 U.S.C. § 1226.  An alien in Plaintiff's situation may be released on bond under certain conditions.  8 U.S.C. § 1226(a).  However, if the Attorney General exercises his discretion to release an alien detained under 8 U.S.C. § 1226, the Attorney General retains discretion to revoke that release under 8 U.S.C. § 1226(b) which states: "The Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien."

---

[7]The statute says "Attorney General," but this authority actually resides in the Secretary of DHS.  The Homeland Security Act of 2002, Pub.L. 107-296, created DHS.  The Act transferred to DHS the functions that the Immigration and Naturalization Service previously exercised relating to detention and removal of aliens.  6 U.S.C. § 251.  In turn, the Act provided that any reference to an officer in any federal law regarding functions that were transferred by the Act is deemed to refer to the Secretary of DHS.  6 U.S.C. § 557.  Thus, because the Act transferred functions related to the detention and removal of aliens to DHS, the reference in 8 U.S.C. § 1226 to the Attorney General should actually be read as Secretary of DHS.  *See United States v. Rios-Zamora*, 2005 WL 2995592, *2 (10th Cir. Nov. 9, 2005) (references in statute regarding admissibility of alien to Attorney General are read as referring to Secretary of DHS).  (The Secretary of DHS, in turn, has authority to further delegate his authority.  8 C.F.R. § 2.1.  The Secretary of DHS has delegated authority regarding custody determinations under 8 U.S.C. § 1226.  *See, e.g.,* 8 C.F.R. § 236.1(c)(8).)  To remain consistent with the statute as it reads, this brief will refer to the Attorney General when that is the term used in the statute.

Congress has barred jurisdiction over such discretionary decisions in 8 U.S.C. § 1226(e) which states: "[t]he Attorney General's discretionary judgment regarding the application of this section *shall not be subject to review*."  8 U.S.C. § 1226(e) (emphasis added).

Congress also used another statute, 8 U.S.C. § 1252(a)(2)(B)(ii), to bar jurisdiction over discretionary decisions such as rearresting an alien released after payment of a bond.  8 U.S.C. § 1252(a)(2)(B)(ii) strips jurisdiction from all courts to review discretionary decisions "under this subchapter."  The subchapter referred to includes 8 U.S.C. §§ 1151-1378.  *Yerkovich v. Ashcroft*, 381 F.3d 990, 992-93 (10th Cir. 2004).  The section regarding rearresting aliens released on bond is 8 U.S.C. § 1226 and is therefore included in that prohibition.[8]  Thus, this Court lacks jurisdiction to consider Plaintiff's claim based on his detention pending a determination of his asylum petition.

### 3.     The Court lacks jurisdiction over claims regarding Plaintiff's detention from April 7, 2009, until June 19, 2009, pursuant to  8 U.S.C. § 1252(g).

On April 7, 2009, the BIA dismissed Plaintiff's appeal of the denial of his asylum application and the order for his removal became final and executable.  *Shehu*, 482 F.3d at 656.  Therefore, when the removal order became final, the authority for his detention changed from 8 U.S.C. § 1226, which relates to aliens in removal proceedings, to 8 U.S.C. § 1231, which relates to aliens ordered removed.

Congress has barred jurisdiction over any cause of action arising from a decision to execute a removal order.  Congress ordered in 8 U.S.C. § 1252(g) that:

---

[8]The jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B) has an exception for "constitutional claims and questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."  8 U.S.C. § 1252(a)(2)(D).  However, because Plaintiff filed his petition with this Court, and not the court of appeals, it is unnecessary to consider whether the court of appeals might have jurisdiction.

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear *any cause or claim by or on behalf of any alien arising from* the decision or action by the Attorney General to commence proceedings, adjudicate cases, *or execute removal orders* against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added).  This jurisdictional bar applies to *Bivens* cases because Congress extends the prohibition even to nonstatutory legal remedies like *Bivens*.  *Id*.  Congress also gave the prohibition a wide cast, referring to "any cause or claim."  *Id.*  This jurisdictional bar applies specifically to this case because detention of Plaintiff following the BIA's denial of his asylum application arises directly from execution of the removal order that became final when the BIA denied his appeal.  That is, detention of Plaintiff was necessary to execute the removal order because if Plaintiff was not in detention, he could not be removed.[9]

### 4.      The Court lacks jurisdiction over any of Plaintiff's claims regarding his detention pursuant to 8 U.S.C. § 1252(b)(9).

As demonstrated above, one statute bars jurisdiction over Plaintiff's claim of unlawful detention from June 1, 2008, to April 7, 2009, and a different statute bars jurisdiction over Plaintiff's claim of unlawful detention from April 7, 2009, to June 19, 2009.  A separate statute, 8 U.S.C. § 1252(b)(9), independently bars jurisdiction over the entire time period.

In 8 U.S.C. § 1252(b)(9), Congress required that any claim relating to the removal of an alien be brought in an action seeking judicial review of a final order of removal.  That statute states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action

---

[9]The fact that Plaintiff detention was nondiscretionary does not affect the applicability of 8 U.S.C. § 1252(g).  *See Tsering v. United States ICE*, 2010 WL 4840478, *3 (10th Cir. Nov. 30, 2010) (applicability of 8 U.S.C. § 1252(g) does not depend on whether decision was discretionary or nondiscretionary).

> taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

Plaintiff seeks to have this Court review the legality of his detention pending his removal.  However, Plaintiff has not consolidated his complaint with a review of his final order of removal.  Therefore, 8 U.S.C. § 1252(b)(9) bars jurisdiction.

Furthermore, even if Plaintiff consolidated a challenge to his detention pending his removal with a review of his final order of removal, the court of appeals has exclusive jurisdiction over such claims.  8 U.S.C. § 1252(a)(5).  Therefore, this Court lacks jurisdiction.

**B.**     **Even if the Court had jurisdiction—which it does not— Plaintiff fails to state a claim.**

   **1.**     **Standard of review**

Longshore should be dismissed because the complaint does not contain allegations that meet the pleading standards of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  In *Iqbal*, the Supreme Court applied its pleading standards ruling in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), to *Bivens* claims.  The Supreme Court noted that while Rule 8 does not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*. at 1949 (citation and internal quotation omitted).  To survive a motion to dismiss, a claim must have "facial plausibility," meaning, "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 1949 (citation omitted).  The Supreme Court then outlined the "[t]wo working principles" of its *Twombly* decision.  First, "the tenet that

a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citations omitted). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950 (citation omitted). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

2.     **Plaintiff fails to state a claim because the Court should not imply a *Bivens* remedy given Congress's preclusion of a remedy.**

A plaintiff fails to state a claim if he seeks a remedy under *Bivens* and the court determines that no such remedy has been or should be created. *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1096 (10th Cir. 2005).

In this case, Plaintiff fails to state a claim because the Tenth Circuit has held that no *Bivens* remedy should be implied where, as here, Congress has barred jurisdiction over a discretionary detention decision. *Van Dinh v. Reno*, 197 F.3d 427, 432-34 (10th Cir. 1999). In *Van Dinh*, the plaintiff sought to bring a class action challenging the decision to transfer the plaintiff to another detention facility. However, the Tenth Circuit found that the Attorney General had discretion under the relevant statute regarding the place of detention and, therefore, the district court lacked jurisdiction over such claim under 8 U.S.C. § 1252(a)(2)(B)(ii). *Id*. at 433. The Tenth Circuit held that a *Bivens* remedy could not be implied where Congress had limited jurisdiction in that way.

A *Bivens* remedy may only be implied when "there are no 'special factors counseling hesitation in the absence of affirmative action by Congress,' no explicit statutory prohibition

against the relief sought, and no exclusive statutory alternative remedy." *Van Dinh*, 197 F.3d at 432 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988)).  In *Van Dinh*, the Tenth Circuit held that 8 U.S.C. § 1252 was an explicit statutory prohibition that precluded a *Bivens* remedy.

The same rationale applied by the Tenth Circuit in *Van Dinh* precludes a *Bivens* remedy here with respect to Plaintiff's detention prior to April 7, 2009 when his order of removal became final.  8 U.S.C. § 1226(a) and (b) makes the detention of Plaintiff discretionary and, therefore, within the limitation-of-jurisdiction provision of 8 U.S.C. § 1252(a)(2)(B)(ii).  In *Van Dinh*, a different discretionary statute, 8 U.S.C. § 1231(g)(1), was at issue.  But that statute, like 8 U.S.C. § 1226(a) and (b) at issue here, also fell into 8 U.S.C. § 1252(a)(2)(B)(ii)'s limitation of jurisdiction.  Therefore, the same result applies here as in *Van Dinh*: no *Bivens* remedy may be implied.

*Van Dinh* also dictates that no *Bivens* remedy may be implied for the detention of Plaintiff from April 7, 2009, to June 19, 2009, for at least two reasons.  First, 8 U.S.C. § 1252(g), as discussed above, bars jurisdiction over Plaintiff's claims of unlawful detention.  Therefore, that statute bars a *Bivens* action just as it did in *Van Dinh*.  Second, Congress has affirmatively required that an alien like Plaintiff subject to a final order of removal be detained.  *Van Dinh* relied on *Chilwicky*'s statement that a *Bivens* remedy may be implied only in the absence of affirmative action by Congress.  *Van Dinh*, 197 F.3d at 432.  In the case of Plaintiff's detention from April 7, 2009, to June 19, 2009, Congress mandated in 8 U.S.C. § 1231(a)(1)(A) that aliens subject to an order of removal be detained.  Therefore, Congress has "affirmatively acted" by mandating how aliens in Plaintiff's situation should be treated, and no *Bivens* remedy should be implied because Plaintiff was treated as Congress mandated.

**3.      Even if the Court creates a *Bivens* remedy, Plaintiff fails to state a claim because the detention of Plaintiff was authorized by statute.**

Plaintiff's legal theory is not clear.  Plaintiff alleges "false imprisonment," but that is a common law tort, not a constitutional tort.  Given that Plaintiff claimed jurisdiction under *Bivens* and sues Longshore in his individual capacity, it appears that Plaintiff is making a claim under *Bivens*.  However, a *Bivens* cause of action is based a violation of a constitutional right.  Plaintiff also claimed jurisdiction based on Amendments 1, 4, 5, 6, and 14.  Dkt. No. 59 at 3.  Given that, Longshore assumes that Plaintiff is claiming a violation of the constitutional right against unreasonable seizures (or, in other words, unlawful detention), found in Amendment 4, and the constitutional right of due process, found in Amendments 5 and 14.

**a.      Plaintiff fails to state a claim of unlawful detention.**

Two of Plaintiff's factual allegations appear to have some potential relevancy to a claim of unlawful detention: (1) Longshore cancelled Plaintiff's bond, and (2) Longshore falsely imprisoned Plaintiff.  Neither allegation is sufficient to state a claim of unlawful detention under the Fourth Amendment.

"The Fourth Amendment protects the right of individuals to be free from improper arrest and detention."  *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008); *see* U.S. CONST. amend. IV ("The right of people to be secure in their persons ... against unreasonable seizures ... shall not be violated.").  In order to state a claim of unlawful arrest and detention under the Fourth Amendment, the facts asserted in a complaint must show that it is plausible that both a "seizure" occurred and that the seizure was "unreasonable."  *See Turner v. Schultz*, 130 F. Supp. 2d 1216, 1225 (D. Colo. 2001) (*citing Brower v. County of Inyo*, 489 U.S. 593, 599 (1989)).

Plaintiff's allegation that Longshore's cancellation of a bond fails to state a claim because it does not, as *Iqbal* requires, make it plausible that Longshore is liable for making an unreasonable seizure. *Iqbal*, 129 S. Ct. at 1949. To make a claim plausible, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Here, the misconduct alleged is unlawful detention in violation of the Fourth Amendment. But Plaintiff makes no allegations from which the Court could reasonably infer that cancelling the bond either: (a) was unreasonable, or (b) caused Plaintiff's detention. Instead, as explained above, a bond is a necessary element, in some cases, for an alien to be released from detention. But a bond is not, by itself, sufficient to cause release from detention. *See, e.g.,* 8 U.S.C. § 1226(b) (when alien is detained pending decision on removal, bond may be revoked at any time); 8 C.F.R. § 236.1(c)(9) (when alien rearrested and detained after bond paid, any outstanding bond shall be revoked and cancelled); 8 U.S.C. § 1231(a)(2) (alien ordered removed shall be detained); 8 C.F.R. § 241.3 (b) (previously posted bond of alien ordered removed will be cancelled).

Plaintiff's allegation that Longshore falsely imprisoned him also fails to state a claim under *Iqbal*. All Plaintiff alleges is that Longshore "falsely imprisoned" him. Dkt. No. 59 at 4. That is merely a legal conclusion and insufficient to state a claim. As the Supreme Court stated in *Iqbal*: "the tenet that a court must accept as true all of the allegations in the complaint is inapplicable to legal conclusions. Threadbare recitals of a cause of action, supported by mere conculsory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Furthermore, Plaintiff makes no factual allegations from which the Court could plausibly conclude that Plaintiff's detention was unreasonable, as required to make a Fourth Amendment claim. In fact, as discussed above, Plaintiff's detention was allowed by statute and, during part of his detention, mandated by

19

statute.  *See* 8 U.S.C. § 1226(b) (when alien is detained pending decision on removal, bond may

be revoked at any time); 8 U.S.C. § 1231(a)(2) (alien ordered removed shall be detained).

Therefore, Plaintiff fails to state a claim regarding unlawful detention.

### b.    Plaintiff fails to state a claim of a violation of due process.

Plaintiff's allegations appear to have some potential relevancy to a procedural due

process claim.  To determine whether a plaintiff was denied procedural due process, a court

considers two questions: "(1) Did the individual possess a protected interest to which due

process protection was applicable?  (2) Was the individual afforded an appropriate level of

process."  *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998).

Plaintiff's allegations fail to state a claim for violation of due process because he makes

no allegations regarding the process he was provided.  Plaintiff may argue that the Court should

infer from his silence regarding process that no process was provided.  But the Court cannot

supply that missing allegation and, therefore, eliminate the need for Plaintiff to state a claim.  As

the Supreme Court held in *Iqbal*:  "where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but has not

'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ.

P. 8(a)(2)).  Therefore, Plaintiff fails to state a claim for violation of due process.

Furthermore, even if Plaintiff supplied additional allegations, his due process claim

would fail as a matter of law.  Plaintiff entered the United States on the Visa Waiver Program.

Ex. 1 at ¶ 2.  "[T]he VWP provides all the due process a VWP entrant such as Mr. Cohen is

due."  *Cohen v. Mukasey*, 2009 WL 1766843, *6 (D. Colo. June 22, 2009) (citing *Ferry*, 457

F.3d at 1129 ("By signing the VWP waiver, Ferry received all the due process he is due . . . He

relinquished his rights to all other forms of relief.")).  Therefore, Plaintiff has no due process claim.

<strong>c.     Plaintiff's allegation regarding the claim in the habeas case does not state a <em>Bivens</em> claim.</strong>

Plaintiff alleges that a claim was made in his habeas case, *Cohen v. Mukasey*, 08-cv-1844-LTB-CBS, that his bond was revoked and that that claim was a lie.  Dkt. No. 59 at 4.  It is not clear how Plaintiff alleges that violated a constitutional right.  But that is irrelevant for this motion because liability under *Bivens* may only be premised on personal participation.  *Iqbal*, 129 S. Ct. at 1948 (personal participation based on official's own individual actions required for Bivens liability).  Plaintiff makes no allegation that Longshore made the claim in the habeas case.  Dkt. No. 59 at 4.  Instead, Plaintiff makes his allegation using the passive voice: "it was claimed . . ." *Id.*  Therefore, Plaintiff fails to state a claim against Longshore with respect to that allegation.

**C.     Even if this Court had jurisdiction—which it does not—and the allegations made plausible *Bivens* claims—which they do not—Longshore would be entitled to qualified immunity.**

**1.     Standard of review**

Qualified immunity shields government officials so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is properly reviewed on a motion to dismiss.  *See Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). Qualified immunity affords government officials with "'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curium) (quoting *Malley v. Briggs*, 475 U.S. 335, 341,

343 (1986)).  It gives "government officials a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery."  *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (internal quotation marks omitted).  Therefore, the Supreme Court has "repeatedly stressed" that courts should apply qualified immunity "at the earliest possible stage of litigation," *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (internal quotation marks omitted), and that discovery should not be allowed "until the threshold immunity question is resolved," *Harlow*, 457 U.S. at 818.  *See also Robbins*, 519 F.3d 1242, 1248 (10th Cir.) ("Qualified immunity exists to protect public officials from the 'broad-ranging discovery that can be peculiarly disruptive of effective government.'") (internal quotations omitted).

When qualified immunity is asserted, a plaintiff bears a heavy two-part burden.  *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004).  The plaintiff must demonstrate that: (1) the defendant's actions violated a constitutional right; and (2) the right allegedly violated was clearly established at the time of the conduct at issue.  *Id.*  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202.  "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains."  *Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2003).

For a right to be clearly established, it must be clearly defined.  The qualified immunity inquiry is "fact-specific," *Anderson*, 483 U.S. at 641, and "must be undertaken in the specific context of the case, not as a broad general proposition," *Saucier*, 533 U.S. at 201.  To overcome qualified immunity, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right

must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640 (emphasis added). This rule takes account of one of the fundamental purposes of qualified immunity, which is to bar liability when it would be "difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Saucier*, 533 U.S. at 205.

> **2.** **Longshore is entitled to qualified immunity because Plaintiff has not alleged the violation of any constitutional right.**

As discussed above, Plaintiff fails to allege that Longshore has violated any of his constitutional rights. Plaintiff will be unable to allege any such violation. The reasons Plaintiff will be unable to do so are, in summary, as follows: Plaintiff was detained after he failed to depart the United States as required by the Visa Waiver Program. Ex. 1 at ¶¶ 2-4. Plaintiff was released on bond but then was redetained after he failed to appear at a hearing before an immigration judge and the bond obligor failed—twice—to present Plaintiff to ICE as required. *Id*. at ¶¶ 6-7. Congress has explicitly stated that, in the case of aliens like Plaintiff detained pending a decision on removal, "[t]he Attorney General may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). If an alien is reasserted and detained in those circumstances, the bond must be revoked and cancelled. 8 C.F.R. § 236.1(c)(9). Plaintiff's order of removal became final on April 7, 2009. Congress has explicitly stated that once an alien is ordered removed that the Attorney General *must* detain the alien. 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien."). And regulations require the a bond be cancelled in such a circumstance. 8 C.F.R. § 241.3(b). Therefore, Plaintiff will not be able to allege any facts to show a violation of a constitutional right.

**3.** **Longshore is entitled to qualified immunity because Plaintiff cannot establish that any constitutional right was clearly established at the time it was allegedly violated.**

It is unclear what specific constitutional right Plaintiff alleges Longshore violated and, therefore, it is impossible for Longshore at this point to argue that that specific right was not clearly established.  Without Plaintiff attempting to meet his burden in that regard, Longshore cannot argue against it.  Therefore, Longshore will wait for his reply to address this point.

In the meantime, Longshore reiterates that Plaintiff's detention was authorized and, after April 7, 2009, mandated by statute.  Statutes are presumed to be constitutional.  *See United States v. Pompey*, 264 F.3d 1176, 1179 (10th Cir. 2001).  Therefore, Plaintiff will not be able to show that any constitutional right allegedly violated by Longshore was clearly established.

**Conclusion**

For the foregoing reasons, the Court should dismiss Plaintiff's complaint against Longshore.

DATED May 2, 2011                    Respectfully Submitted,

                                     JOHN F. WALSH
                                     United States Attorney

                                     s/ *Timothy B. Jafek*
                                     TIMOTHY B. JAFEK
                                     Assistant United States Attorney
                                     1225 Seventeenth Street, Suite 700
                                     Denver, Colorado  80202
                                     Telephone:(303) 454-0100
                                     Fax: (303) 454-0407
                                     timothy.jafek@usdoj.gov

                                     Counsel for John P. Longshore

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on May 2, 2011, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following e-mail addresses:

solomoncohen160@gmail.com
loriseago@elpasoco.com

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand delivery, etc.) indicated by the nonparticipant's name:

_s/ Timothy B. Jafek_
TIMOTHY B. JAFEK

Case 1:09-cv-01169-LTB-CBS   Document 71   Filed 05/02/11   USDC Colorado   Page 26 of 26